IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRIAN LITTLE, | **JURY TRIAL DEMANDED** |
| Plaintiff, | |
| | CASE NO.: 4:17-cv-02619 |
| v. | |
| CITY OF ST. ANN, MISSOURI, | |
| and | |
| ANTHONY MARSALA, in his individual and official capacity | |
| and | |
| ERIC WILLIS, in his individual and official capacity, | |
| and | |
| KEVIN BREIDENBACH, in his individual and official capacity, | |
| and | |
| MARTIN EVERETT, in his individual and official capacity, | |
| Defendants. | |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Brian Little, by and through his undersigned counsel, and for and in support of his complaint against all Defendants, and states as follows:

**PARTIES AND JURISDICTION**

1

1.	At all times relevant herein, Plaintiff Brian Little was a United States citizen and resident of St. Louis County, State of Missouri, within the Eastern Division of the Eastern District of Missouri.

2.	Plaintiff Brian Little (hereinafter as "Plaintiff") is a 50-year old African-American male.

3.	Defendant the City of St. Ann, Missouri (hereinafter as "City of St. Ann") is a fourth class city, and a political subdivision of the State of Missouri duly organized under the Constitution of Missouri.

4.	Defendant City of St. Ann operates and controls the St. Ann Police Department (hereinafter as "SAPD") an instrumentality of the City of St. Ann.

5.	At all times relevant herein, Defendants Anthony Marsala (DSN 747) (hereinafter as "PO Marsala"), Eric Willis (DSN 119) (hereinafter as "Lt. Willis"), Kevin Breidenbach (DSN 141) (hereinafter as "PO Breidenbach"), and Martin Everett (DSN 146) were duly commissioned police officers of the State of Missouri and law enforcement officers employed by the SAPD. They are sued in their individual and official capacities.

6.	At all times relevant herein, Defendants acted under color of the laws, statutes, ordinances, and regulations of the United States, the State of Missouri, and the City of St. Ann.

7.	At all times relevant herein, except as explicitly stated, Defendants acted under the management, regulations, policies, customs, practices and usages of the City of St. Ann, pursuant to their authority as law enforcement officers.

8.	On information and belief, the City of St. Ann carries insurance coverage which is applicable to some or all of these claims.

9. The acts alleged herein occurred in the County of St. Louis, within the Eastern Division of the Eastern District of Missouri.

10. This action is brought pursuant to 42 U.S.C. Sections 1983 and 1988 and the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution. The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction over the included Missouri state law claims pursuant to 28 U.S.C. §1367.

12. Plaintiff demand a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## FACTS COMMON TO ALL COUNTS

13. On or about January 17, 2015, Plaintiff's father, in the process of completing errands and medical visits with Plaintiff, wandered off and went missing in the City of St. Louis, Missouri.

14. Plaintiff contacted the City of St. Louis Metropolitan Police Department to advise police of his missing father and make a missing person's report.

15. Plaintiff went to St. Ann Assisted Living, the nursing home in which his father resided, and advised its staff of his father's absence.

16. On information and belief, St. Ann Assisted Living contacted the SAPD, after which report a "silver alert" was issued by the SAPD.

17. Defendant PO Marsala responded to the nursing home and took a missing person's report, which is memorialized in St. Ann Police Report 15-00083.

18. Simultaneously, Plaintiff contacted the SAPD to make a missing person's report.

19. SAPD advised Plaintiff that he needed to respond to the SAPD headquarters in person to file such a report. Due to his immediate lack of transportation, a SAPD dispatcher

notified Plaintiff that an SAPD patrol vehicle would be dispatched to Plaintiff's location, and give him a courtesy ride to the SAPD headquarters.

20. Plaintiff waited at his residence for the aforementioned courtesy ride.

21. PO Everett, alone, initially responded to the Plaintiff's residence.

22. Plaintiff greeted PO Everett and began to explain the situation regarding his father's absence.

23. Almost instantaneously PO Marsala arrived and took a physically commanding position behind Plaintiff.

24. The Plaintiff, concerned with the physical proximity of the officers, asked PO Marsala and PO Everett if everything was okay.

25. Upon that inquiry, PO Marsala informed Plaintiff that he would be searched and "patted down" for "officer safety", to which Plaintiff consented.

26. No weapons or contraband were found on Plaintiff subsequent to the search.

27. Prior to the arrival of SAPD officers, Plaintiff had secured a ride with a neighbor ("Neighbor").  Plaintiff informed the officers that he secured said ride, and that he would travel to the SAPD headquarters with Neighbor's assistance for the purpose of making a missing person's report.

28. Plaintiff specifically declined the "courtesy ride" from the SAPD.

29. PO Marsala and PO Everett then demanded to know "what [Plaintiff] had done with his father", where his father's vehicle was located, and if that vehicle was at Plaintiff's residence.

30. PO Marsala informed Plaintiff that he was not free to leave, placed Plaintiff into handcuff restraints, and placed Plaintiff into the rear of a police vehicle.  Said handcuff restraints were secured around Plaintiff's wrists at the front of Plaintiff's body.

31. After Plaintiff's inquiry, Plaintiff was told by SAPD officers that he was *not* under arrest.

32. While handcuffed, Plaintiff was allowed to retain and use his personal cell phone.

33. Plaintiff was advised by SAPD officers that he would be driven to SAPD headquarters by SAPD officers.

34. At this point, Neighbor approached SAPD officers and informed them of his agreement to drive Plaintiff to SAPD headquarters.

35. Neighbor further inquired as to why Plaintiff was being detained.

36. SAPD officers responded to Neighbor's inquiry by telling him that (a) it was none of his business; and (b) that Neighbor would be taken into custody if he did not leave the immediate area.

37. A SAPD officer then proceeded to drive Plaintiff, who was handcuffed in the back seat of a police vehicle, away from Plaintiff's residence and park said vehicle on Plaintiff's street, but a distance from his home.

38. Additional SAPD officers then arrived at Plaintiff's residence and entered it without Plaintiff's permission or a search warrant.

39. Plaintiff's son was home during the aforementioned entry by SAPD officers.

40. Shortly thereafter, Plaintiff's wife Kasonda Little arrived at Plaintiff's home and demanded that the SAPD officers leave.

41. Said SAPD officers failed and refused to exit Plaintiff's home.

42. Upon the St. Ann officers' refusal to leave the residence, Kasonda Little contacted 9-1-1.

43. Subsequent to said 9-1-1 call, a second municipal department arrived on scene.

44. On information and belief, officers from this second department inquired of SAPD officers whether they had (a) a warrant; or (b) probable cause to search the residence.

45. Upon a negative response by SAPD officers, an officer from this second department instructed them to immediately discontinue their search and leave the residence. SAPD officers then left Plaintiff's residence.

46. PO Marsala then returned to the police vehicle in which Plaintiff was being detained and proceeded to drive Plaintiff to the police station.

47. During Plaintiff's detention and shackling in handcuffs, Plaintiff repeatedly asked PO Marsala and other SAPD officers why he was detained, and whether he was under arrest. PO Marsala and other SAPD officers failed and refused to answer.

48. During the drive to the SAPD headquarters, PO Marsala radioed that the Plaintiff was "agitated" and that he would require "back-up".

49. When the police vehicle arrived at the station, it was met by Lt. Willis.

50. Plaintiff, who at this point was not under arrest and presumably just another ordinary citizen receiving a "courtesy ride", was told to exit the vehicle.

51. Plaintiff was still in handcuff restraints when told to exit the vehicle.

52. Plaintiff was then forcibly removed from the vehicle and tackled to the ground by PO Marsala and Lt. Willis.

53. PO Breidenbach immediately arrived on scene, and without preamble, caused Plaintiff to be electrocuted with a Taser.

54. Immediately preceding said Taser use, an SAPD officer called for PO Breidenbach to "Light him up."

55. Plaintiff's head and body were slammed into the ground and repeatedly contacted by SAPD officers.

56. When Plaintiff inquired whether he was under arrest, he was told: "you are now motherfucker."

57. Plaintiff was formally arrested and charged with two counts of Assault on a Law Enforcement Officer and one count of Resisting Arrest.

58. Plaintiff was kept in police custody in the City of St. Ann for five-days before he was finally released on bond.

59. The Defendants' version and alleged depiction of these events was memorialized in a St. Ann Police Incident Report 15-00084, with supplements (hereinafter "report").

60. The report was drafted and approved by the Defendants jointly and severally.

61. The report omitted (a) the illegal search of Plaintiff's home and (b) the scope of the assault on Plaintiff and attempted to justify his injuries by falsely claiming he resisted arrest.

62. After this illegal search, his illegal detention, assault and arrest, Plaintiff filed an Internal Affairs Complaint with the St. Ann Police Department.

63. A response by SAPD Captain Adrian Barry (hereinafter as "Capt. Barry") stated that "the investigation determined that the officers involved acted improperly and there was a breakdown in communication during this incident."

64. The response by Capt. Barry further stated that he had "taken the liberty to speak with our municipal prosecutor in reference to this incident."

7

65.     Despite having "taken the liberty to speak with the municipal prosecutor," the wrongful, illegal, and unjust prosecution of the Plaintiff continues to this date.

66.     It is a policy, custom and practice of certain officers with the SAPD to falsely charge citizens with "resisting arrest" to justify physical assaults on defendants.

67.     Upon information and belief, the City of St. Ann and its police department and/or police officers have previously engaged in constitutional violations similar to those set forth herein, to include but not necessarily be limited to false arrests of African-American citizens and residents and the use of unnecessary and unwarranted physical force against African-American citizens, showing a pattern and practice, custom and usage on the part of Defendants to violate the constitutional rights of African-American citizens under color of state law.

## COUNT I
## USE OF EXCESSIVE FORCE COGNIZABLE UNDER 42 U.S.C. §1983
## (AGAINST ALL DEFENDANTS)

For Count I of Plaintiff's cause of action against all Defendants, Plaintiff states:

68.     Plaintiff incorporates by reference each and every allegation and averment set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

69.     Defendants jointly or severally used excessive physical force against Plaintiff in a physically aggressive and injurious way, without cause or justification, which actions and conduct caused Plaintiff to sustain injuries and damages.

70.     Defendants' use of force was unnecessary and punitive.

71.     Defendants' manufacturing and promulgation of a false police report is inexcusable and illegal.

72.     Plaintiff had a Constitutional right to be free from the excessive use of force.

73.     Plaintiff had a Constitutional right to be free from the false allegation and charges of resisting arrest and assault on a law enforcement officer.

8

74. In the City of St. Ann, the Defendants, under the guidance, leadership and/or the direction of the SAPD, have created and followed through with a pattern and practice of harassing and assaulting African-American citizens without justification or provocation.

75. The use of force by Defendants jointly or severally was unreasonable, obdurate, wanton, and intentional under the totality of the circumstances, particularly because Plaintiff was not resisting arrest, was not attempting to escape, was not acting violently or aggressively, or in a manner that posed any obvious danger to himself or anyone else, and therefore was in violation of Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

76. As a direct and proximate result of the actions of Defendants as set forth herein, Plaintiff was caused to sustain injuries and damages which included, but were not necessarily limited to: being injured with a Taser, being physically assaulted by officers, having his residence illegally searched, and being unjustly detained, arrested and charged.

77. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered and will continue to suffer physical pain and suffering, emotional pain and suffering, change in appearance, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

78. The acts of Defendants were taken under color of state law.

79. The conduct of the Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in the individual capacities and to deter each of them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable to include but not necessarily be limited to his physical injury and suffering, medical expenses, and his emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; plus the costs of suit of this action and reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT II
## VIOLATION OF FOURTH AMENDMENT RIGHT AGAINST ILLEGAL SEARCH AND SEIZURE COGNIZABLE UNDER 42 U.S.C. §1983
## (AGAINST ALL DEFENDANTS)

For Count II of Plaintiff's cause of action against all Defendants, Plaintiff states:

80. Plaintiff incorporates by reference each and every allegation and averment set forth in the preceding paragraphs of this Complaint as though fully set forth herein.

81. Defendants' search of the Plaintiff's residence was taken without a warrant or probable legal cause to support it. The search was illegal and Unconstitutional.

82. The search of Plaintiff's home was omitted from all police reports.

83. Defendants' manufacturing and promulgation of a false police report is inexcusable and illegal.

84. Plaintiff has a Constitutional right to be free from illegal search and seizure.

85. Plaintiff has a Constitutional right to be free from the false allegation and charge of resisting arrest.

86. In the City of St. Ann, the Defendants, under the guidance, leadership and/or the direction of the Department, created and followed through with a pattern and practice of

harassing and violating the Constitutional rights of African-American citizens without justification or provocation.

87. The illegal search by Defendants jointly or severally was unreasonable, obdurate, wanton, and intentional under the totality of the circumstances, particularly because they did not have a warrant, permission, or legal justification to search the residence, and therefore was in violation of Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

88. As a direct and proximate result of the actions of Defendants as set forth herein, Plaintiff was caused to sustain injuries and damages which included, but were not necessarily limited to a feeling of insecurity in his own residence.

89. As a direct and proximate result of the actions of Defendants, Plaintiff suffered and will continue to suffer, emotional pain and suffering, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

90. The acts of Defendants were taken under color of state law.

91. The conduct of the Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in the individual capacities and to deter each of them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable to include but not necessarily be limited to his physical injury and suffering, medical expenses, and his emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; plus the costs of suit of

this action and reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT III
## CONSPIRACY TO DEPRIVE CIVIL RIGHTS
## COGNIZABLE UNDER 42 U.S.C. §1983

For Count III of Plaintiff's cause of action against Defendants Anthony Marsala, Eric Willis and Kevin Breidenbach– all in their individual capacity, Plaintiff states:

92. Plaintiff incorporates by reference each and every allegation and averment contained in the preceding paragraphs of his Complaint as though fully set forth herein.

93. Defendants jointly or severally assaulted the Plaintiff Brian Little.

94. After the assault, the Defendants conspired amongst themselves to cover-up the assault by claiming that Plaintiff was resisting arrest.

95. Defendants were jointly or severally responsible for the creation and promulgation of this false police report.

96. The officers acted outside the scope of their employment and for personal reasons in (a) assaulting the Plaintiff; and (b) in attempting to cover-up the assault, and in manufacturing / promulgating a false police report.

97. Defendants' use of force was unnecessary and punitive.

98. Defendants' manufacture and promulgation of a false police report is inexcusable and illegal.

99. Plaintiff had a Constitutional right to be free from the excessive use of force.

100. Plaintiff had a Constitutional right to be free from the false allegation and charge of resisting arrest.

101. In the City of St. Ann, the Defendants, under the guidance, leadership and/or the direction of the Department, created and followed through with a pattern and practice of harassing and assaulting African-American citizens without justification or provocation.

102. The use of force and false reporting engaged in by Defendants jointly and severally was unreasonable, obdurate, wanton, and intentional under the totality of the circumstances, particularly because Plaintiff was not resisting arrest, was not attempting to escape, was not acting violently or aggressively, or in a manner that posed any danger to himself or anyone else, and therefore was in violation of Plaintiff's rights under the Fourth and/or Fourteenth Amendments to the United States Constitution.

103. As a direct and proximate result of the actions of Defendants as set forth herein, Plaintiff was caused to sustain injuries and damages which included, but were not necessarily limited to: being injured with a Taser by police, being assaulted by police, being illegally and wrongfully detained and being wrongfully charged by police with a crime.

104. As a direct and proximate result of the actions of Defendants, Plaintiff suffered and will continue to suffer physical pain and suffering, emotional pain and suffering, change in appearance, mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, and stress.

105. The conduct of the Defendants and each of them jointly and separately was reckless and callously indifferent to the constitutional rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in the individual capacities and to deter each of them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff prays for a judgment against Defendants for compensatory damages in an amount that is fair and reasonable to include but not necessarily be limited to his physical injury and suffering, medical expenses, and his emotional pain and suffering; for punitive damages against the Defendants in their individual capacities; plus the costs of suit of this action and reasonable attorneys' fees; and such other and further relief as the Court deems fair and appropriate under the circumstances.

### COUNT IV
### FAILURE TO INSTRUCT, TRAIN, SUPERVISE, CONTROL, AND/OR DISCIPLINE AGAINST THE CITY OF ST. ANN AND ST. ANN POLICE DEPARTMENT COGNIZABLE UNDER 42 U.S.C. § 1983

For Count IV of Plaintiff's cause of action against the City of St. Ann, Plaintiff states:

106. Plaintiff incorporates by reference each and every allegation and averment contained in the preceding paragraph of his Complaint as though fully set forth herein.

107. Defendant violated the constitutional rights of Plaintiff as set forth herein.

108. There exists within the SAPD (hereinafter in Count IV referred to as "Department") and/or the City of St. Ann (hereinafter in Count IV referred to as "City") policies, customs, practices and usages that are so pervasive that they constitute the policies of this Defendant, and caused the constitutional deprivations of Plaintiff as set forth herein. The policies, customs, practices, and usages that exist are:

    A. To arrest African-American subjects without reasonable cause or provocation and in violation of their constitutional rights;

    B. To ignore the policies and procedures of the City and/or the Department, by encouraging and/or permitting the false arrests of suspects, particularly African-American citizens;

14

    C. To engage in a course of conduct designed to cover-up and insulate City officials from sanction, civil and criminal, and/or by the Department or City when targeting African-American citizens; and

    D. To fail to adequately train, supervise, and/or discipline police officers and/or City officials concerning the practices afore-described to assure compliance with City and/or Department policy, state and federal laws, and the Constitution of the United States.

109. Alternatively and without waiver of the foregoing, the City's training program was not adequate to train its officers and officials to properly handle situations like the one involving Plaintiff, and therefore, the City had a policy or custom of failing to adequately train employees/officials of the City and/or Department.

110. The City and/or the Department knew that additional and/or different training was needed to avoid the false arrests of African-Americans and other constitutional deprivations like that of Plaintiff.

111. The Department was on notice that certain of the named Defendants have had numerous civil rights violations and excessive force complaints lodged against them.

112. The City is ultimately vested with the duty, power and authority to train, supervise, discipline and otherwise control the officers of the Police Department. The City failed in its duty to generally train, supervise and discipline Defendants and to conform their conduct with constitutional requirements. Specifically, the City failed to adequately train, supervise and discipline officers of the Police Department/agents of the City in the proper and lawful arrests of subjects, particularly African-American citizens; failed to train, supervise and discipline officers with regard to the duty to intervene and/or report transgressions, and to truthfully respond to

inquiries. The city effectively abrogated the power to train, supervise, discipline and control officers of the Police Department/agents of the City, resulting in the constitutional deprivations to Plaintiff as set forth above.

113.	The acts of the Defendants as set forth herein were taken under color of state law.

114.	As a direct and proximate result of the actions of this Defendant as set forth herein, Plaintiff has been damaged as a result of being responsible for medical bills, physical injury, by pain and suffering, emotional damages, pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment of life, stress, and loss of reputation.

WHEREFORE, Plaintiff prays for judgment against the Defendant seeking money damages against them for compensatory damages in an amount that is fair and reasonable for his emotional pain and suffering; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT V
## PLAINTIFF'S CLAIM FOR ASSAULT AND BATTERY UNDER MISSOURI STATE LAW AGAINST CERTAIN DEFENDANTS

For Count V of Plaintiff's cause of action against Defendants Anthony Marsala, Eric Willis and Kevin Breidenbach – all in their individual capacity, Plaintiff states:

115.	Plaintiff incorporates by reference each and every allegation and averment set forth in the preceding paragraphs in this Complaint as though fully set forth herein.

116.	Defendants physically assaulted Plaintiff, without justification or provocation, by grabbing and slamming him to the ground, electrocuting him with a Taser, then wrongfully arresting him and wrongfully charging him with a crime.

117. As a result of this unlawful assault and battery, Plaintiff was injured.

118. As a direct and proximate result of the assault on Plaintiff by Defendants, Plaintiff suffered physical injuries and pain and suffering, and caused him to incur medical bills. The unlawful actions of the Defendants also caused him pain of the mind, including but not limited to mental anguish, inconvenience, humiliation, embarrassment, loss of enjoyment, stress and loss of reputation.

119. The conduct of Defendants was reckless and callously indifferent to the rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish Defendants in their individual capacity and to deter them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Brian Little prays for judgment against Defendants seeking compensatory damages in an amount that is fair and reasonable for his physical injuries, pain and suffering, and for emotional pain and suffering; for punitive damages against Defendants in their individual capacities; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

## COUNT VI
## PLAINTIFF'S CLAIM FOR MALICIOUS FALSE PROSECUTION
## STATE LAW AGAINST ALL DEFENDANTS

For Count VI of Plaintiff's cause of action against all Defendants, Plaintiff states:

120. Plaintiff incorporates by reference each and every allegation and averment set forth in the preceding paragraphs in this Complaint as though fully set forth herein.

121. By authoring and perpetrating a false police report, Defendants made an illegal, improper, perverted use of process, a use neither warranted nor authorized by the process.

122. The Defendants had an improper purpose in exercising such illegal, perverted, or improper use of process – namely to conceal their illegal and unconstitutional assault on Plaintiff Brian Little.

123. As a direct and proximate result of the actions of the Defendants, Plaintiff sustained damages as set forth above.

124. The conduct of the Defendants was reckless and callously indifferent to the rights of Plaintiff, malicious and wanton with respect to those rights, and an award of punitive damages is warranted and necessary to punish the Defendants in their individual capacity and to deter them, and others from the same or similar transgressions in the future.

WHEREFORE, Plaintiff Brian Little prays for judgment against Defendants seeking compensatory damages in an amount that is fair and reasonable for his physical injuries and pain and suffering and for emotional pain and suffering; for punitive damages against Defendants in their individual capacities; for the costs of this action, to include but not necessarily be limited to reasonable attorney's fees; and for such other and further relief as the Court deems fair and appropriate under the circumstances.

Respectfully submitted,

NEWTON BARTH, L.L.P

By: _____
Talmage E. Newton IV, MO56647
tnewton@newtonbarth.com
Brandy B. Barth, MO56668
bbarth@newtonbarth.com
555 Washington Ave., Ste. 420
St. Louis, Missouri 63101
(314) 272-4490 – Office

Attorneys for Plaintiff